Good morning, Your Honors. This is Svetlana Stepanyan for Petitioners. Your Honors, I think this case is even more straightforward than the previous case that we just discussed. Basically, in this case, Your Honors, Ms. Stepanyan was clearly targeted for her activities. This is a case where the question, she was found credible already, so we must assume all the facts to be true and see if the last incident, which was discounted by the IJ and the BIA improperly, first of all, should be considered in terms of whether or not it amounts to past persecution. The last incident took place two days after she was detained by the NSS, which is pretty powerful in Armenia, the National Security Service, and the proximity of the harm, as well as the individuals stating in their threats that they would deal with her in a different way at the NSS, and then two days later attacking her and beating her up, I think should be considered as part of the harm on account of political opinion or imputed political opinion. Also, the harm to the family under Korablina is very important because in this case, as to the well-founded fear, in this case, after she left, her husband sent the complaint to the prosecutor's office, and then he was beaten. And it's not similar to the case that the BIA has cited in its decision. It's more analogous to, I believe, I don't have the case in front of me right now, but it's a case where the threats continued. They actually came to the house. It's not a distant threat from 50 years ago. They came to the house, the individuals from NSS. They continued to seek her, to look for her. And also, the last incident was one month before the asylum merits hearing in court, so it was an ongoing threat. With regard to whether or not journalists and media personnel are persecuted, on their administrative record, pages 228 to 230, I would argue there is ample evidence of violence towards members of the press. And there is an incident discussed of an editor, actually, not necessarily a journalist, even though in this case she was the one deciding what articles get published. And the government, in its closing argument, interestingly stated, if your honor finds her credible, then we have to believe that she had powerful contacts with the opponents of the government. This is Judge Clifton. You've emphasized what happened to her husband, so I'd like to focus on that for a section. What do we know about that so-called beating? We know that the individuals who came to the house were from the NSS. They identified themselves as from the NSS. And they were searching for the petitioner, Ms. Stepanyan, and they beat him up. I mean, that's the extent of it. But we really don't know much about the beating, do we? We only have her testimony, and she seems to know almost nothing about it. That's correct, but we do know that government officials beat him up. And we know that he didn't even tell her if he went to the doctor. So, I mean, how do we take that to be a beating? Your honor, I would argue that even if we don't consider that harm in and of itself, because we don't know the extent of the beating, it still plays into the cumulative incidence of persecution. What makes all of this persecution? Exactly what harm was suffered by anybody? The petitioner was detained. We have one night of detention when she acknowledges there's no physical harm. That's correct. And then the punch in the abdomen and the knife being pulled on her throat. We have that. Is there any authority that adds those up and says that amounts to the severe concept of past persecution? Not specifically with those facts, your honor. Again, I would argue that's based on the case law that says cumulatively. But there's not much cumulative. I mean, all you've got, you've got one night of detention with no physical harm, a punch in the abdomen, which wasn't really further described, a threat with a knife, and the knife was never used, and something that happened to her husband sometime later that was at best ill-described, and we don't know whether it even caused him to go to the doctor. And that appears to be the sum total. Is that correct? Well, your honor, there were death threats as well. And the threats in and of itself could be persecution. And in this case, it has been shown that it's not just random threats. The government is willing to carry out those threats, in fact, two days after they make the threat. And also, your honor, more importantly in this case, I think the issue of the well-founded fear notwithstanding past persecution is very clear in this case. What is it that would make a well-founded fear for the future? Well, nothing seems to have happened in over 10 years. Your honor, the TV station has gone out of business. She's not affiliated with it any longer. Correct. The TV station went out of business, your honor, I believe 2010. And the last incident where the authorities came looking for her was two years after the TV station went out of business in 2012, one month before her asylum merits hearing. Obviously, it could have even continued until today. And the country reports, and I'm not sure if the court can take judicial notice of this year's report, but the one that's in the record from 228 to 230, administrative record, shows that violence is increasing against journalists. An editor was targeted by random individuals in front of his house and beaten, and those suspects were not detained. It's very similar to the attack that occurred with petitioners. So it's very clear that if she returns, even at the airport possibly, but once they see that she was an editor and she was targeted by the government as a political opponent, I mean, I would argue that it's well over 10% chance, given the country reports today, that she would be targeted again and possibly more seriously harmed given the climate today in Armenia. Is her husband still there? I believe. I don't want to state incorrectly, Your Honor, so I don't know. And we have nothing, no information about any harm being suffered by him since the so-called beating in 2006. We have the visits to the house, Your Honor. Repeat it. That's not the question I asked. I mean, you're talking about beatings. We do not regard him, Your Honor, but I would just target that he's not similarly situated because he was not the journalist or editor. He was not the one viewed as a political opponent. So that's what I would argue, Your Honor. And I'm not sure how much time I have left, but I'd like to reserve. Can I just ask one question? You still have almost three minutes. So do we need to remand this case? Say we agree with you that the agency made some mistakes in not properly accounting for the threats or the beating of the husband. Do we need to remand them? I'm not sure if we could. It sounds like you'd like us to just grant relief outright, but I'd like you to explain why that would be the proper course. Under matter of venture, Your Honor, I think if the courts basically find that there is a well-founded fear of future persecution, you would simply remand it for background checks under the Real ID Act. There's no – basically, I'm not sure if the court is able to, under current case law, grant asylum outright without a remand. I think you're correct. The point is, obviously, no, because at some point the Attorney General has discretion. But short of that, is there anything left to this case? I do not think so, Your Honor, because if the court finds well-founded fear of future persecution, the government can try to rebut it, of course, upon remand. But I don't think in this case the country reports would even help. On the contrary, it's even more severe in this case. What about whether the government could try to show that she could relocate, or are these other questions that don't seem to have been reached yet? That's – Your Honor, that's true. For that issue, it would need to be – well, actually, there's a Ninth Circuit case law, Your Honor, that states that if the government is the entity doing the persecution on a national level, then internal relocation is automatically presumed to be unreasonable. But is that something we could determine now, or is that the agency would need to discuss in the first instance? I believe the agency would need to discuss that, Your Honor, if I'm not mistaken. Okay. So we have taken you a bit into your rebuttal time. I'll still give you a few minutes for rebuttal at the end. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Raya Jarawan on behalf of the Respondent, the Attorney General. In this case, I'll dive right into the nexus argument, which we spent a little bit of time on, but not as much. In this regard, in this case, substantial evidence certainly supports the immigration judge's denial of relief, where Ms. Stepanian did not suffer harm that rose to the level of persecution. But more importantly, the incidents on which she bases her asylum claim did not occur on account of a protected ground. In regards to the May 2, 2006 attack, which the Board of the Immigration Judge focused on, you know, Ms. Stepanian testified that she thought those individuals were hooligans or thieves. In addition, during that incident, she did not recognize or identify the men who attacked her. They were sitting in uniform or clothing to identify them as National Security Service employees. That incident alone, regardless of past persecution, which the agency did not analyze for that incident, the nexus argument or analysis was actually dispositive in that incident alone, that there was no politically motivated reason for that attack based on the record evidence. The other evidence during that incident that are important are the fact that she was very vague about the incident. There's no testimony at all that the attacker said anything to her in connection with her TV station employment or in connection with her refusal to work with the NSS agents against her boss, Mr. Karapetya. That attack, there's simply, as the Immigration Judge stated, there was simply nothing in the evidence that would substantiate that this incident was politically motivated. And I think that was a very clear statement from the Immigration Judge and affirmed by the Board that that incident alone had simply no connection to any kind of political opinion. In regards to past persecutions, are members of the public... Before you go there, this is Judge Clifton. She indicated at the outset she thought there were thieves, but they never took anything. And her testimony was that they told her to do what we tell you to do. Doesn't that suggest that their motivation was not to steal something, which they didn't do, but to intimidate her? Well, in the testimony, and I think we point this out in our brief, in the testimony there's actually an absence of any evidence about a theft. It's not that she says they didn't take anything. She simply doesn't talk about it at all. And she, in the statement itself, do what we tell you to do, especially vague. And she herself says on multiple occasions throughout the testimony that she thought they were thieves or hooligans. Do what we tell you to do really doesn't have any meaning in that context. And if they really did want her to do what, you know, what she believes was an order in terms of working with the NSS agents, they didn't make that clear. They didn't identify them as NSS agents. They didn't say anything in regards to having a connection with this individual who she met at the coffee shop and emphasized this initial spying or whatever it was that she, you know, explained that they were asking her to do. There was simply not enough evidence at all, and that statement alone, especially in the context of the attack itself and the way she described it, simply is not enough to show an exhibition. No details at all are context to that statement. And, again, from my perspective, it's certainly enough to show whether it's enough to compel. That's the real issue here, and I hear what you're saying there. But it's hard for me to say that there's not an inference to be drawn there. Well, there's certainly, and I think we even say this in our brief as well, that there can be an inference, but the standards of the record must compel the conclusion. And in this case and in other cases held by this court, the possibility of drawing two inconsistent conclusions from the evidence does not prevent the administrative agency's findings from being supported by substantial evidence. And the fact finder must be, you must compel the reversal of the fact finder's decision, and the court cannot substitute its own views for that of the fact finder. So just because there are two permissible interpretations of the evidence doesn't mean that it wasn't reasonable for the fact finder to conclude that there was no access based on the evidence that was presented. This is Jeff Rice. She met with the MS as agent two days before this meeting, and he warned her that they would have to use a different language because she wasn't understanding their direction, implying that it was going to be not a foreign language but a physical language. And then two days later, as the IJ found, she was walking home from work and then suffered this beating. It wasn't a mild beating. She submitted medical records that showed she had internal bleeding to her stomach. How do you correlate the temporal proximity of the warning nearly two days earlier and then the carrying out of the beating? Well, in terms of the timeline, she aired a story in April of 2006 regarding the attack on Armenians in Russia, and she received a phone call soon thereafter within the hour from the NSS agent, and she described it as him speaking in a rude manner. And he said, we will talk to you in a different language in regards to her airing that story. But in terms of the record, it simply says end of April. We don't really know what day. And, yes, on May 2, 2006, that's when she was followed at her building. But, again, the immigration judge and the board, the immigration judge is the fact finder, simply found that this was not enough. And in the John Sheff case, which I believe we cited in our brief, the temporal, the timing and the location alone of an attack does not compel the conclusion that a petitioner was attacked because of a second round. And I believe in that case the petitioner had been leaving a Roma, a gypsy Roma event, and was found to be beaten right after that event. And the individuals in question, I believe it occurred literally right after he left the meeting. But the immigration judge found that this does not compel the conclusion that it was just because of him attending that event. There has to be more than that based on that case. And the immigration judge in this case simply found as a fact finder that there was simply not enough. Judge Rice, again, but don't we have more here? We don't just have the event of hearing the news article, but we have a direct threat. You don't have a direct threat in the case you've just cited. In that case, they don't say the words, you know, that they said to Ms. Depanya that we will talk to you in a different language. But, again, even that statement alone, that could mean many different things. That could mean that they could try to get her fired. That could mean that they will show up at her office again and talk to her. Wasn't there also a threat to her husband, though, that was really a threat to her, like he'll never see her again or something of that nature? In fact, no, the record going to the husband, and I'm glad you brought that up, on page 178, as I reviewed the record, the house was searched based on shortly after, or I actually don't know how long after, but after the letter was sent to the prosecutor. However, her testimony was that they searched the house and then beat the husband up when the husband tried to stop them, as if he was trying to stop them from searching the house. And in that testimony on that page, and I think in the page right after, there is no threat made to her during that search of the house. I believe in Petitioner's brief he tries to argue that there was, but in reviewing the record there is no actual threat to her. I believe, Mrs. Judge Rice, page 283 of the record contains a written statement by the petitioner where she articulates that threat. That's correct, but in her testimony she does not. And the IJ said in his decision, on balance and considering all of the testimony of the respondent and the evidence in terms of documentary evidence, the IJ is looking at everything in total. And based on the fact that she did make certain statements in her written statement, but in her testimony itself there's, again, simply no reference at all to a threat made to her. So are you arguing now that that's an inconsistency? I don't think the IJ thought it was an inconsistency, right? No, I'm not saying the IJ thought it was an inconsistency, but the IJ considered both of those pieces of evidence and still concluded, based on that, that the incident regarding her husband, in fact, it really doesn't play a role in the IJ's decision, but in terms of the IJ specifically pointing it out, but the IJ does consider it as a whole in the fact that the IJ considered all the evidence as a whole. How do we know that the IJ considered this written statement about the statement that her husband would never see her again? Because the immigration judge, it's presumed that the immigration judge does consider the whole record, and the fact that the immigration judge states in his decision specifically on balance and considering all of the testimony of the respondent and the evidence in terms of documentary evidence of page 91, that it's inferred that the immigration judge did consider everything. And furthermore, the immigration judge made it clear that the physical harm she suffered was at the hands of two unknown assailants who confronted her at the entry to her building, and then further on went on to say there's nothing in their evidence that would substantiate that this incident was politically motivated, and then continued on to well-founded fear analysis. And in that analysis, the immigration judge then continued to talk about the television statement and how no other reporters had been injured, which undercuts the argument that Ms. Ponian made about the country conditions evidence, where it says that some journalists have been harmed, but the immigration judge and the board also considered that evidence and said if that were the case, then why were the reporters in her particular station not harmed? So I think as a whole, the immigration judge and the board did consider everything in total. And I do see my time is up, so I will wrap it up unless your auditors have other questions. I will just argue in terms of the well-founded fear. Again, there's nothing to show that now that the TV station is closed and she's been fired from that position along with the fact that no reporters were harmed other than her, there's simply not enough evidence to meet her standard, to meet her burden, that she was faced with well-founded fear of persecution. Thank you, counsel. You are out of time now, so I think I need to cut you off. Thank you, Your Honor. Thank you for your argument. And we took your opposing counsel over as well, so I'll give you two and a half minutes for rebuttal. Thank you, Your Honor. Just briefly with regard to the Texas issue, just to summarize, this case is different from Tom Jeff. Again, as Judge Rice indicated, there was no threat in that case. And in this case, there was a threat. Two days later, the harm and the statements of do as we tell you and that we will talk in a different language during the detention, I don't think it does compel the finding that it was based on the imputed political opinion or the actual political opinion. More importantly, Your Honors, in this case, the government is arguing that, or the judge argued that if there's no harm at that station to other editors, that means that she doesn't have a well-founded fear. We would argue that the country reports discussing tons of attacks on journalists, many attacks on journalists and editors and so forth, I mean, that's in and of itself sufficient to establish the well-founded fear. It doesn't have to be saying that someone was attacked at that specific station or that we don't even know what the other editors or other journalists were doing at that station. We do know that what respondent was doing and she was responsible for approving not only the projects but also approving the upcoming projects she indicated. So in this case, the nexus is pretty clear for the harm. There is no other reasonable interpretation. That SS detaining her several times and coming to threaten her and so forth is clearly evidence of being targeted. I would argue that. They had detention several times. There was the one detention at the. What are you defining as detention? I know of one overnight on page 160. The other is not detention. Don't exaggerate. She was called into NSS on page 172 and she was detained on page 168. Let me see if that's two different events. I apologize, Your Honor, if it seems that way. But wasn't she called into NSS and or detained on two separate occasions? Not that I'm aware of. I'm aware of an overnight. I mean, I think you're defining detention way broadly. Okay. Being asked questions does not amount to detention. Certainly doesn't by itself amount to persecution. That's correct. I'm arguing more in terms of the well-founded fear of future persecution if she's been less defined generally targeted by NSS on several occasions. Why would they have any interest in her in the future? Because, Your Honor, the government is still interested in persecuting journalists and editors. Oh, wait a minute. But you've indicated there's no evidence whatsoever of anybody else affiliated with that TV station being persecuted. Correct. But there's evidence of other people. And she's not working with the TV station anymore. So why would that make her a target? Because two years after the TV station closed down, Your Honors, she was still being targeted even up to a month before her individual asylum hearing. And there is no evidence that that has changed in our media in any way that would rebut that well-founded fear. Thank you, Your Honor. And if there's no further questions, I believe my time is up. Thank you both sides for the helpful arguments. The case is submitted and we are adjourned. Thank you. Thank you, Your Honor. Take care. Take care.
judges: Clifton, Friedland, Rice